UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

FILED

2003 DEC -2 PM 2: 15

------------------------------------------------------------x
DAVE SHUTTLE AND BARBARA SHUTTLE,
on behalf of themselves and
all others similarly situated,

             Plaintiffs,

- against -

ARNIE GELLER, G. MICHAEL HARRIS,
AND GERALD COUTURE, and
RMS TITANIC, INC.,

             Defendants.
------------------------------------------------------------x

**CLASS ACTION**
**JURY TRIAL**
**DEMANDED**

8:03-CV-2515-T-26 MAP

**COMPLAINT**

Plaintiffs, Barbara Shuttle and David Shuttle, individually and on behalf of all a class of all other minority shareholders of R.M.S. Titanic, Inc. ("RMST"), by and through their undersigned attorneys, hereby alleges, as and for their complaint against defendants, as follows:

### Nature of the Action

1.    In this action, plaintiffs, shareholders of defendant RMS Titanic, Inc. ("RMST"), seek to recover damages to them, and to all minority shareholders, caused by the defendants' numerous breaches of their fiduciary duties in connection with a hostile takeover of RMST in November 1999, in that defendants prevented plaintiffs and the class from exercising their rights under Florida's dissenters' rights statutes, Section 607.0902 of the Florida Statutes and Section 607.0704 of the Florida Business Corporations Act.

### Parties

2.    Plaintiffs Barbara Shuttle and David Shuttle are, and were, at all relevant

1
**BALES & SOMMERS, P.A.**
Suite 702 Courvoisier Centre II, 601 Brickell Key Drive, Miami, Florida 33131
Telephone: 305-372-1200  Facsimile: 305-372-9008  E-Mail: rbalesjr@attglobal.net

times herein the joint owners of 1,000 shares of RMST stock. They bring this action in their own right, as well as on behalf of other similarly situated shareholders. Barbara Shuttle and David Shuttle are residents of Erie, Pennsylvania.

3. Defendant RMST is a corporation organized and existing pursuant to the laws of the State of Florida, and maintains its principal place of business at 3340 Peachtree Road, N.E., Atlanta, Georgia, 30326. At certain relevant times herein, RMST maintained an office for the transaction of business at 401 Corbett Street, Clearwater, Florida 33756.

4. Defendant Arnie Geller ("Geller"), a resident of Atlanta, Georgia, is the President, Chief Executive Officer and a Director of RMST.

5. Defendant G. Michael Harris ("Harris"), a resident of Clearwater, Florida, is a former Executive Vice President, Chief Operating Officer and director of RMST.

6. Defendant Gerald Couture ("Couture"), a resident of Clearwater, Florida, is a vice-president, Chief Financial Officer and a Director of RMST.

### Jurisdiction And Venue

7. Jurisdiction is appropriate in this Court, pursuant to 28 U.S.C. § 1332(a), in that the plaintiffs are citizens of Pennsylvania and the defendants are citizens of Florida and Georgia, and the amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars; this action is not a collusive one to confer jurisdiction on this Court which it would not otherwise have.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because the defendants reside in this Judicial District and/or are subject to personal jurisdiction in this

2

Judicial District.

## Class Action Allegations

9. Plaintiffs bring this class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of all persons who were shareholders in November, 1999 just prior to the acquisition of majority shareholder control by the takeover defendants and their group and entitled to voting and dissenters' rights under Florida Statute 607.0902.

10. Members of the class are so numerous that joinder is impracticable. While the exact number of class members is unknown to plaintiffs at this time and can only be ascertained through appropriate discovery, plaintiffs believe that there are approximately 1,000 shareholders who held shares at the relevant time.

11. Plaintiffs' claims are typical of the other members of the Class. Plaintiffs and the other members of the Class have sustained damages because of defendants' wrongdoing alleged herein. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class litigation. Plaintiffs have no interest which is contrary to or in conflict with those of the Class plaintiffs seek to represent.

12. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the Class individually to seek relief for the wrongdoing alleged herein. Plaintiffs know of no difficulty in the management of this case that

**BALES & SOMMERS, P.A.**
Suite 702 Courvoisier Centre II, 601 Brickell Key Drive, Miami, Florida 33131
Telephone: 305-372-1200   Facsimile: 305-372-9008   E-Mail: rbalesjr@attglobal.net

would preclude its maintenance as a class action.

13. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Section 607.0902 of the Florida Statutes was violated;

(b) whether defendants violated their fiduciary duties by preventing plaintiff and the class members from exercising their rights under Section 607.0902 of the Florida Statutes and by failing to provide adequate notice of actions taken without a meeting pursuant to Section 607.0904;

(c) whether the members of the Class have sustained damages as a result of defendants' conduct, and the proper measure of such damages.

## CLAIM FOR BREACH OF FIDUCIARY DUTY

14. The allegations contained in paragraphs 1 through 13, in their entirety, are incorporated by reference.

15. In or about 1987, Titanic Ventures Limited Partnership ("TVLP") was formed for the purpose of exploring the wreck and surrounding oceanic areas of the vessel RMS Titanic ("Titanic"), which sank in 1912, and lies more than approximately 400 miles off the coast of Newfoundland.

16. In August 1987, TVLP sent an expedition to research and recover objects from the wreck site. TVLP recovered approximately 1,800 objects during the course of the

4

thirty-two dives in that expedition.

17. On or around May 4, 1993, RMST acquired the assets and assumed all the liabilities of TVLP.

18. In June 1993, RMST began a second expedition to the Titanic wreck site, during which RMST recovered approximately 800 artifacts and produced 105 hours of videotape footage during the course of the fifteen dives.

19. By judgment entered on June 7, 1994 in the United States District Court for the Eastern District of Virginia (the "Salvor Judgment"), RMST was declared the sole salvor-in-possession of the Titanic and the sole and exclusive owner of items recovered from the Titanic and any items that may be recovered in the future.

20. At the time of the entry of the Salvor Judgment, and as a condition thereof, RMST expressly agreed and represented that it would not, and had no intention of, selling any artifacts salvaged from the Titanic to private collectors. Indeed, the corporate mandate of RMST was and has been to effectively act as the guardian of these important historical artifacts, to utilize them for historical verification, scientific education and public awareness, and to generate revenue from the exhibitions of these items throughout the world in a safe, secure and legitimate manner.

21. Between July 1994 and August 1998, RMST completed three other expeditions to the Titanic site, recovering more than eleven hundred objects, and producing approximately 250 hours of videotape footage and more than 2000 digital photographs. The 1998 expedition resulted in the recovery of the largest artifact recovered to date, a 20-ton section of

the hull recovered from the debris field surrounding the wreck.

22.  Despite the fact that RMST was a successful enterprise, defendants Geller, Harris, and others, thereafter joined by defendant Couture, conspired together to engineer a hostile takeover of RMST in November 1999 (the "Takeover"), in derogation of minority shareholders' voting and dissenters' rights, and to enrich themselves at the expense of the shareholders.

23.  In response to the Takeover, then-current management commenced suit in the United States District Court for the District of Connecticut, alleging, among other things, violations of Section 13(d) and 14 of the Securities Exchange Act of 1934 (the "Connecticut Lawsuit"). A settlement was eventually reached which resulted, in part, in the resignation of the pre-Takeover management effective January 21, 2000.

24.  Since seizing control of RMST, the Defendants have engaged in a series of unlawful activities that have included failing to hold a single shareholders meeting since November 1999, in violation of the bylaws of RMST.

25.  An integral part of the conspiracy by the defendants to take over the management and control of RMST in November, 1999, involved preventing the shareholders from exercising their voting and dissenters' rights under applicable state statutory law.

26.  Under Section 607.0902 of the Florida Statutes applicable to hostile takeovers, acquisition of control is conditioned upon the approval by resolution of a majority of the pre-existing disinterested shareholders, and dissenting shareholders are entitled to receive an amount equal to not less than the highest price paid per share by the acquirers.

27.     Moreover, pursuant to Section 607.0704 of the Florida Business Corporations Act, if there is to be a corporate action taken by written consent, then notice of said action must contain a "clear statement of the right of shareholders dissenting to be paid the fair value of their shares upon compliance with further provisions of this act."

28.     The defendants failed and refused to obtain any shareholder resolution as required, voted their shares unlawfully to impose new management and control without the consent of the majority of disinterested shareholders, and in so doing, undermined plaintiff's and all other similarly situated shareholders' dissenters' rights and violated Florida law.

29.     Upon information and belief, plaintiffs and the plaintiff class members owned approximately 8,000,000 shares of RMST stock at the time of the takeover in November 1999, and the highest price paid for the purchase of shares utilized by the takeover defendants was a minimum of $3.25.

30.     The definition of the class herein excludes any of the defendants or any of them who participated and/or supported the November 1999 Takeover, including but not limited to Joe Marsh, William Gasparrini, Steven Sybesma, and Bruce Kapp.

31.     Defendants prevented plaintiff and the class members from voting these shares at the time of the takeover and subsequently, and from obtaining dissenters' rights at a time when RMST was profitable, knowing that the minority shareholders would attempt to assert their dissenters' rights, and have thus caused plaintiff and the class members to be damaged in an amount to be determined at trial, but believed to exceed approximately $26,000,000.

WHEREFORE, plaintiffs, on behalf of themselves and the other members of the class

herein, demand judgment against defendants and each of them, jointly and severally, as follows:

I. Awarding compensatory damages to Plaintiffs and the other members of the Class, together with interest thereon;

II. Awarding Plaintiffs and the other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees; and

III. Awarding plaintiffs and the members of the Class such other and further relief as may be just and proper under the circumstances.

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury.

Dated: December 1, 2003
Miami, Florida

> Bales & Sommers, P.A.
> Courvoisier Center II
> 601 Brickell Key Drive - Suite 702
> Miami, Florida 33131
> (305) 372-1200 telephone
> (305) 372-9008 facsimile
> email: rbalesjr@attglobal.net
>
> By: _____
> Richard M. Bales, Jr., Esq.
> Florida Bar No. 247952)

And

New York Counsel

STORCH AMINI & MUNVES P.C.
405 Lexington Avenue
New York, New York 10174
(212) 490-4100

## VERIFICATION

STATE OF PENNSYLVANIA )
                                  ) ss.:
COUNTY OF ERIE           )

DAVID SHUTTLE, being duly sworn deposes and says:

I am a Plaintiff in this action. I have read the foregoing complaint and know the contents thereof. The contents are true to my own knowledge, except as to the matters alleged upon information and belief, and as to matters based upon documents and records, as to which I believe them to be true.

_____
DAVID SHUTTLE

Sworn to before me this
25TH day of November, 2003

_____
Notary Public

NOTARIAL SEAL
NANCY R. THEUERKAUF, NOTARY PUBLIC
ERIE, ERIE COUNTY, PENNSYLVANIA
MY COMMISSION EXPIRES JAN. 29, 2006

## VERIFICATION

STATE OF PENNSYLVANIA )
                                  ) ss.:
COUNTY OF ERIE            )

BARBARA SHUTTLE, being duly sworn deposes and says:

I am a Plaintiff in this action. I have read the foregoing complaint and know the contents thereof. The contents are true to my own knowledge, except as to the matters alleged upon information and belief, and as to matters based upon documents and records, as to which I believe them to be true.

*Barbara H. Shuttle*
BARBARA SHUTTLE

Sworn to before me this
25th day of Nov., 2003

*Nancy R. Theuerkauf*
Notary Public

NOTARIAL SEAL
NANCY R. THEUERKAUF, NOTARY PUBLIC
ERIE, ERIE COUNTY, PENNSYLVANIA
MY COMMISSION EXPIRES JAN. 20, 2006