UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

-------------------------------------------------------------

| | |
|---|---|
| DAVE  SHUTTLE AND BARBARA SHUTTLE, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>       - against -<br><br>ARNIE GELLER, GERALD COUTURE, and RMS TITANIC, INC.,<br><br>             Defendants. | **CASE NO.:**<br>**8:30-cv-2515-**<br>**T-26-MAP** |

-------------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF THE**
**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

## I.     INTRODUCTION

Plaintiffs Dave Shuttle and Barbara Shuttle (the "Named Plaintiffs"), on behalf of

themselves and all others similarly situated (collectively, the "Plaintiffs"), commenced

this action to redress alleged breaches of fiduciary duties committed by defendants

Arnie Geller and Gerald Couture, in that defendants allegedly prevented Plaintiffs from

exercising their rights under Florida's dissenters' rights statutes.  Defendants have

categorically denied the allegations raised in this case and in a case against them styled

*D'Addario v. Geller,* Case No. 2:02CV250(RBS), pending in the United States

District Court for the Eastern District of Virginia, Norfolk Division ("Virginia

Action").  Between those two cases, over the course of the last three and a half years,

the parties have engaged in extensive discovery, motions practice, pre-trial

proceedings, an appeal and two mediations.  Shortly before trial in the Virginia Action,

after serious consideration of the attendant risks and uncertainties of litigation, the

parties resolved to settle both matters.  To that end, after extensive arms-length

negotiations, the parties finalized a corporate governance plan which they believe in

good-faith is in the best interests of all parties and the shareholders.  The corporate

governance plan, among other things, aims to significantly improve the management of

R.M.S. Titanic, Inc. and its parent company, Premier Exhibitions, Inc.  In addition to

the plan, the parties have agreed to issue mutual releases and award reduced attorneys'

fees to plaintiffs' counsel.  The district court overseeing the Virginia Action has

scheduled a fairness hearing on the proposed settlement for January 20, 2006.

As explained below, defendants, defendants' counsel and plaintiffs' counsel (the

"Settlement Proponents") believe that the proposed settlement and the proposed notice

of the settlement agreement to shareholders (the "Notice") are fair, reasonable and adequate. The Named Plaintiffs, however, do not agree with all aspects of the settlement. Nevertheless, in light of Plaintiffs' counsel's obligations as a fiduciary to the class, the Settlement Proponents respectfully request that the Court preliminarily approve the settlement agreement, approve the Notice, award Plaintiffs' counsel reduced attorneys' fees, and issue any further relief which the Court believes is just and proper.

## II.  SUMMARY OF THE SETTLEMENT NEGOTIATIONS AND THE SETTLEMENT AGREEMENT

The settlement agreement, attached hereto as Exhibit A, is the product of three and a half years of litigation, including months of settlement negotiations, research and reflection. The parties participated in an extended mediation in January 2005, but could not come to agreement on several points of contention. At that mediation session and subsequently, the parties attempted to draft a corporate governance plan, but could not agree on the salient terms. After tabling the issue for months, the parties in the Virginia Action resumed settlement talks again in September 2005, including attending a settlement conference with the Honorable Tommy E. Miller, United States Magistrate Judge, on September 30, 2005. Although the parties still disagreed on the comparative strengths and weaknesses of their cases, the parties acknowledged that the litigation had adversely impacted management of the companies and that it was in all parties' interests to come to mutual agreement on a resolution.

To that end, over several weeks, the parties negotiated the terms of settlement, eventually crafting the corporate governance plan that is being presented to the Court for approval. During those negotiations, defendants' counsel expressed a desire to

concurrently settle both the Virginia Action and the instant matter. Immediately, Plaintiffs' counsel involved the Named Plaintiffs in the settlement negotiations. The Named Plaintiffs decided to not endorse all aspects of the settlement agreement, but the Settlement Proponents believe that such settlement is in the best interests of the class.

The settlement agreement provides, among other things, that:

- The board of directors will be comprised of a majority of independent directors;
- An audit committee will be established, comprised exclusively of independent directors, which will, among other things, have oversight responsibility for internal control and corporate compliance;
- A corporate governance committee will be established, comprised of a majority of independent directors, which, among other things, will oversee the implementation of the corporate governance plan, review all contracts of officers, pre-screen nominees for directorships, and review the compensation of the company's five highest paid officers;
- The non-management independent directors will meet at least twice each calendar year and will have the authority to retain counsel, accountants, or other experts when their expertise is required;
- The directors will review their compensation and make changes if appropriate;
- All nominees for directorships will satisfy certain requirements and possess core competencies;
- Once a year over the five-year period for which the corporate governance plan is applicable, the board of directors will submit a written report to plaintiff's counsel confirming the company's compliance with the plan; and
- Non-compliance with the plan will be remedied by injunctive relief and under Florida corporate law.

In addition to establishing the corporate governance plan, the settlement agreement includes mutual releases between the parties. That provision is aimed at bringing finality to this dispute and reinforces the corporate governance plan's mandate that injunctive relief is the only remedy available under the settlement. Finally, the settlement provides for Plaintiffs' counsel to receive a reduced fee and expense award of $300,000, to cover all fees and expenses incurred by all counsel in both actions. As explained below, this award constitutes a substantial reduction in Plaintiffs' counsels' fees and expenses and is reasonable under the circumstances. The Settlement Proponents

believe that the settlement agreement is comprehensive, addresses the primary allegations raised in this litigation, and is in the best interests of all parties.

## III.     LAW AND ARGUMENT

### A.     Pursuant to Rule 23, The Settlement Agreement is Fair, Adequate and Reasonable

The Settlement Proponents respectfully request that the Court preliminarily approve the Settlement Agreement pending a fairness hearing. This analysis is conducted pursuant to Federal Rule of Civil Procedure 23(e), which mandates that "[t]he Court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class." Before approving a proposed settlement of a class action suit under Rule 23(e), a court must make a determination that the proposal is fair, reasonable and adequate. Leverso v. Southturst Bank of Al., Nat. Assoc., 18 F.3d 1527, 1530-1531 (11th Cir. 1994); Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984); Cotton v. Hinton, 599 F.2d 1326, 1330 (5th Cir. 1977);[1] Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1839. The proponents of a class action settlement have the burden of persuading the court that their compromise is fair, reasonable and adequate. Cotton, 559 F.2d at 1330. Notwithstanding that burden, settlements in class action cases are favored because such cases "have a well deserved reputation as being the most complex." Id., at 1331. Similarly, the court's judgment should be "informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." Bennett, 737 F.2d at 986. Further, "the trial judge ought not try the case in the settlement hearings." Cotton, 559

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

F.2d at 1330; see also, Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d §

1839 ("the proceeding seeking court approval of the settlement should not become a trial

of the case's merits").

In assessing whether a proposed class action settlement is fair, reasonable and

adequate, this Court considers a number of factors, including:

1. the likelihood of success at trial and potential recovery;
2. the complexity, expense and duration of litigation;
3. the terms of the settlement;
4. the procedures afforded to notify the class members of the proposed
   settlement, and to allow them to present their views;
5. the judgment of experienced counsel for the plaintiff class;
6. the substance and amount of opposition to the settlement; and
7. the stage of the proceedings at which the settlement was achieved.

Strube v. American Equity Investment Life Insurance Co., 226 F.R.D. 688, 697 (M.D.

Fla. 2005) (citations omitted); see also, Bennett, 737 F.2d at 986.

Consideration of the relevant factors listed above unequivocally demonstrates that

the proposed settlement in this case is fair, reasonable and adequate.  First, while the

plaintiffs contend that defendants Geller and Couture breached their fiduciary duties,

defendants vehemently deny any wrongdoing on their part, claim that their actions are

protected by the business judgment rule, and raise several affirmative defenses which

they contend bar plaintiffs' claims, including the doctrines of estoppel, laches and waiver.

Moreover, it is impossible to predict whether the trial court would permit certain

evidence to be presented to the jury and how the jury would react to the evidence as a

whole.  Plus, even if plaintiffs were to prevail, it is unknown how shareholders would

react since the Company's stock is presently trading at a level comparable to, or higher

than, that which it was trading at or around the time of the alleged takeover.

Of paramount importance to the sustainability of the claims raised in this litigation is the applicability of Florida's dissenters' rights statutes. Defendants argue that Florida's dissenters' rights statutes, a relevant section of which was repealed by the legislature, do not apply to this dispute. Plaintiffs, not surprisingly, disagree.

In addition to their position that there were no breaches of fiduciary duties, defendants contend that Florida's Control Share Acquisition Statute does not apply in this case, for a number of reasons. First, defendants submit RMS Titanic, Inc. was not subject to the statute in 1999 because it was not an "issuing public corporation," under Section 607.0902(4)(a)(2), in that RMS Titanic did not have a principal place of business, principal office or substantial assets within Florida. Moreover, defendants contend the statute does not apply because under Section 607.0902, there was not a hostile takeover, contrary to what is alleged in paragraph 26 of plaintiffs' complaint. This is the case, in part, because the "acquiring person", Mr. Joseph Marsh, did not acquire his control shares with a majority or more of all voting power. See Section 607.0902(11)(a). Defendants note that Marsh's acquisition totaled approximately 20% of RMST's outstanding stock, far less than the requisite number of shares necessary to constitute a majority or more of all voting power.

Furthermore, defendants submit that plaintiffs, as well as the class members, do not have a private cause of action under the Control Share Acquisition Statute, and that it does not provide any other remedies for the alleged violations thereof. Defendants contend the statute does not entitle plaintiffs or the class members to recover monetary damages in this action and, as noted previously, the statute also does not apply to plaintiffs' specific claims. Defendants aver that plaintiffs' suit is fatally flawed because

plaintiffs have tried to shoehorn what is a unique statutory claim, with specified rights and remedies that do not apply in this context, into a common law claim for breach of fiduciary duties. Simply put, defendants posit there is no common law claim for breach of the Control Share Acquisition Statute.

Finally, defendants submit that plaintiffs cannot prevail in this action because it was improperly filed as an individual claim when, in fact, it needed to be brought as a derivative action; because plaintiffs failed to make a demand on the Board of Directors prior to filing suit, as required by Section 607.07401(2); and because the claims are barred by the settlement reached in a prior federal case, RMS Titanic, Inc., et al v. Arnie Geller, et al, Case No. 3:99cv2401, which action was filed and resolved in the United States District Court for the District of Connecticut. The strength of defendants' arguments is relevant to this Court's appraisal of the proposed settlement, as defendants believe the named plaintiffs and the certified class cannot achieve success on the merits, if this case proceeds to verdict.

Counsel for the plaintiffs, however, maintain that defendants' arguments are inapposite based on a fundamental misunderstanding of the nature of plaintiffs' claims. Plaintiffs are suing defendants for breaches of their fiduciary duties by preventing shareholders from exercising their voting and dissenters' rights under Florida's Control Share Acquisition Statute. Since this case is about defendants' alleged breaches of their fiduciary duties and the resulting damage to the class, and not about causing the Company to comply with Florida's Control Share Acquisition Statute, the claims alleged herein are not derivative and plaintiffs were therefore not required to make a demand on the Company.

Similarly, although defendants argue that the Company was not an "issuing public corporation" under Section 607.0902(4)(a)(2), plaintiffs point out that at the time of the takeover in November 1999, there were substantial assets of the Company in Florida because, among other reasons, the Company was conducting a major exhibition in Orlando, Florida.  Further, defendants claim that Florida's Control Share Acquisition Statute does not apply because Joe Marsh did not acquire his control shares with a majority or more of all voting power.  However, plaintiffs argue that Joe Marsh was but one member of the takeover group who collectively constituted more than a majority of all voting power.  Finally, as the Court noted in its Order denying defendant Couture's motion to dismiss signed April 14, 2004, the statutory procedures by which dissenting shareholders enforce their rights should be liberally construed in circumstances where no prejudice is shown to the corporation.  Plaintiffs argue that defendants cannot point to any prejudice and, therefore, any failure on the part of the plaintiffs to strictly comply with Florida's Control Share Acquisition Statute will not bar plaintiffs' claims.

Based on the numerous legal and factual disputes above, the Settlement Proponents agree that there are significant uncertainties inherent in this litigation and the Settlement Proponents have determined that settlement is in their best interests.

Second, the risks associated with the expense, complexity and duration of litigation support the Court's approval of the proposed settlement now.  Over the course of this litigation and the Virginia Action, the parties have expended hundreds of thousands of dollars and countless hours.  Each side is aware that an adverse decision at the trial court level will cause the losing party to appeal the decision, leading to further protracted litigation.  Under the circumstances, the parties wish to resolve the dispute

with finality, evidenced by the mutual releases they are issuing as part of the settlement. See Maher v. Zapata Corp., 714 F.2d 436, 466-467 (5th Cir. 1983).

Third, the corporation will benefit greatly from the corporate governance plan, which mandates that the board of directors be composed of a majority of independent directors, establishes an audit committee comprised exclusively of independent directors with oversight responsibility for internal control and corporate compliance, establishes a corporate governance committee composed of a majority of independent directors, and provides that non-compliance with the plan will be remedied by injunctive relief and under Florida corporate law. In fact, corporate governance plans such as the one proposed here have been used, either in whole[2] or in part,[3] to settle at least twenty-four shareholder litigations, SEC investigations, and similar proceedings. The corporation will also benefit from resolving this litigation, which has distracted management and created financial uncertainty.

Fourth, the Notice, in clear and concise language, explains why the shareholder is receiving the Notice, the allegations raised in the complaint, the procedural history of the case, the provisions of the settlement agreement, the process for approving the settlement, the time and date of the fairness hearing, the steps the shareholder must take if he wishes to object to the settlement, the legal effect of the settlement, and directions for how to obtain further information. (Proposed Notice, Ex. A to Proposed Order). The Notice is

---

[2] In lawsuits or proceedings involving the following companies, settlements were approved in which the sole relief was changes in corporate governance: Ingersoll Rand Co., SouthWest Gas, Bell Atlantic Corp., Applied Micro Circuits Corp., Zapata Corp., and Parmalat Finanziaria S.p.A.

[3] In lawsuits or proceedings involving the following companies, settlements were approved in which part of the relief was changes in corporate governance: Sprint Corp., MCI, Waste Management Inc., Broadcom Corp., Cendant Corp., Putnam Investment Management LLC, FirstEnergy Corp., HCA Inc., Samsonite, Hanover Compressor Company, AON Corp., Honeywell International Inc., Mattel Inc., Entarasys Networks Inc., UCAR International Inc., Computer Associates International Inc., LoneStar Steakhouse and Saloon Inc., and Health South Corp.

also sufficient because it will be mailed to all shareholders who are members of the class, thereby alleviating any concerns that interested persons will not receive notice. Under these circumstances, the Notice is more than adequate to satisfy the requirements of Rule 23(e) and due process.

Fifth, plaintiffs' counsel has fiduciary obligations to the unnamed and unrepresented class members which require plaintiffs' counsel to submit this settlement for approval. See 32B Am. Jur. 2d Federal Courts § 2134 ("...and the court, acting in its fiduciary capacity to preserve and guard the rights of absent class members when settlement in a class suit is under consideration, may find that a settlement should be approved and accepted since it is fair, reasonable and adequate despite the fact that the class representatives have rejected the proposed settlement"); Shelton v. Pargo, Inc., 582 F.2d 1298, 1305-1306 (4th Cir. 1978); In re M&F Worldwide Corp. Shareholders Litigation, 799 A.2d 1164, 1167 (Del. Ch. 2002) ("...plaintiffs' counsel is entitled to present a settlement...even if that settlement is opposed by some of the named plaintiffs..."); Bryan v. Pittsburgh Plate Glass Co., 494 F.2d 799, 803 (3rd Cir. 1974) ("...a settlement is not unfair or unreasonable simply because a large number of class members oppose it"); Kincade v. General Tire and Rubber Co., 635 F.2d 501, 508 (5th Cir. 1981) ("...'assent of the named plaintiffs is not a prerequisite to the approval of a settlement'") (quoting Pettway v. American Cast Iron Pipe Co., 576 F.2d 1157, 1216 (5th Cir. 1978)); Watson v. Ray, 90 F.R.D. 143, 153 (S.D. Iowa 1981). The fact that plaintiffs' counsel and defendants' counsel believe that the settlement is in the best interests of the company and the class is significant because "the trial court is entitled to rely upon the judgment of experienced counsel for the parties." Cotton, 559 F.2d at 1330

(citing Flinn v. FMC Corporation, 528 F.2d 1169 (4th Cir. 1976), cert. denied, 424 U.S.

967 (1976)).

Sixth, there are approximately one thousand shareholders in the class and the

Settlement Proponents anticipate some objections to the settlement, specifically with

respect to the fact that the settlement does not require the defendants to financially

compensate the company for their alleged acts.[4]  In settlement negotiations, payment by

the individual defendants was sought in order to ensure that RMST and Premier would

have the assets to fund the governance plan.  Defendants Arnie Geller, Steven Couture, as

Executor of the Estate of Gerald Couture and RMST and Premier have represented,

though, that the companies are able to fund the costs of implementing the corporate

governance plan and have, moreover, agreed to jurisdiction of the Florida and Virginia

federal courts with respect thereto.  Additionally, a settlement is not necessarily unfair or

unreasonable simply because interested parties oppose it.  32B Am. Jur. 2d Federal

Courts § 2134 (citations omitted); Bryan v. Pittsburgh Plate Glass Co., 494 F.2d 799 (3rd

Cir. 1974) (holding that a settlement agreement is fair, reasonable and adequate despite

the objections of more than twenty percent of the class); Pettway v. American Cast Iron

Pipe Co., 576 F.2d 1157, 1215 (5th Cir. 1978) ("…a settlement can be fair

notwithstanding a large number of class members who oppose it"); Flinn, 528 F.2d at

1173.

Courts have often approved class action settlements based on non-pecuniary

benefits to the corporation.  See Bell Atlantic Corporation v. Bolger, 2 F.3d 1304, 1311

(3rd Cir. 1993) (citing Granada Investments, Inc. v. DWG Corp., 962 F.2d 1203, 1207

(6th Cir. 1992) (holding that "the terms of the [non-pecuniary] settlement offer

---

[4] In fact, the Named Plaintiffs are not in agreement with the settlement.

substantial benefit to [the company] and its shareholders" because the company received a release from potential liability to the settling plaintiff and the settlement called for changes in corporate governance)); see also, Maher, 714 F.2d at 466 ("Thus, a settlement may fairly, reasonably, and adequately serve the best interest of a corporation…even though no direct monetary benefits were paid by the defendants to the corporation") (citing Goldman v. Northrop Corp., 603 F.2d 106, 108-9 (9th Cir. 1979)); Zimmerman v. Bell, 800 F.2d 386, 391 (4th Cir. 1986) (non-monetary settlement relief adequate because it provided guidelines for "future management responses to tender offers and takeover bids"). Moreover, the court should not undertake to compare the proposed settlement with hypothetical or speculative measures of recovery that might have been gained because "'inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'" Cotton, 559 F.2d at 1330 (quoting Milstein v. Werner, 57 F.R.D. 515, 524-525 (S.D.N.Y. 1972)).

Seventh, between this case and the Virginia Action, the parties have conducted extensive discovery as to the relevant facts, researched the relevant law, reliably estimated the likely outcome of the case and evaluated potential damages. See Bell Atlantic Corp., 2 F.3d at 1314. Over the last three and a half years, the parties have taken the depositions of more than ten individuals, responded to hundreds of interrogatories, and produced thousands of documents. Additionally, the parties argued several motions to dismiss and motions for summary judgment, including argument before the Fourth Circuit Court of Appeals. Moreover, the parties have twice submitted to mediation and settlement conferences. Initially, in January 2005, the parties conducted an extended mediation in Florida before mediator James Chaplin of Mediators, Inc. More recently,

the parties engaged in a one-day settlement conference before the Honorable Tommy E. Miller. The proposed settlement reflects the independent assessment of the mediator's view of the likely outcomes, costs and benefits to the parties in the Virginia and Florida actions. After discovery, the determination of the parties to settle the case should be accorded great weight. Id. ("...post-discovery settlements are more likely to reflect the true value of the claim and be fair.").

In addition to the aforementioned seven factors, the Court must also ensure that the settlement agreement is not the product of fraud or collusion. Leverso, 18 F.3d at 1531; Bennett, 737 F.2d at 986. There is plainly no fraud or collusion here; the settlement negotiations were conducted at arms-length and were adversarial in nature. At a mediation session in early 2005, the parties disagreed on several key points and could not come to an amicable resolution of this dispute, but a corporate governance plan was discussed and tabled. Prior to the settlement conference before the Honorable Tommy E. Miller, the parties revived discussion on the corporate governance plan and, at the conference and continuing thereafter, the parties negotiated several important aspects of the corporate governance plan. Numerous suggestions by both sides were raised and rejected. Over the course of several weeks, the parties solidified a corporate governance plan that mirrors the plans used in similar shareholder litigations. Irrefutably, the settlement negotiations were conducted appropriately.

### B. Plaintiffs' Counsel's Request for Reduced Attorneys' Fees and Costs is Appropriate and Reasonable

The settlement agreement also provides that Plaintiffs' attorneys, Storch Amini &

Munves PC ("SAM"), shall receive $300,000,[5] which constitutes a substantial reduction

in the value of the actual services and expenses SAM put forward.  Generally, where

plaintiff's attorneys' fees are contingent, courts assess the reasonableness of the proposed

attorneys' fees in light of the time fairly spent on the case, skill required and employed on

the case, complexity of the issues, the prevailing rate of compensation for those with the

experience of the attorneys, and the attendant risk of a contingent arrangement.  See

Angoff v. Goldfine, 270 F.2d 185, 189 (1st Cir. 1959); Wright, Miller & Kane, Federal

Practice and Procedure: Civil 2d § 1841; see also, In re Pacific Enterprises, 47 F.3d at

379; Granada, 962 F.2d at 1208-1209.

Based on these factors, plaintiffs' attorneys' fees are clearly reasonable.  Over the

last three and a half years, plaintiffs' counsel have served and responded to voluminous

discovery, engaged in extensive motion practice including numerous motions to dismiss

and motions for summary judgment, and successfully argued an appeal in the Fourth

Circuit Court of Appeals.  As set forth in the Declaration of Steven G. Storch, attached

hereto as Exhibit B, the $300,000 payment to plaintiffs' counsel includes out-of-pocket

expenses and attorneys' fees.  In light of the work performed by plaintiffs' counsel in this

matter, such amount is most reasonable.  Further, the fee is justified in light of the

benefits received by RMST, Premier, and the class as a result of the proposed settlement.

Indeed, the corporate governance plan gives greater participation to shareholders and

independent directors, establishes audit and corporate governance committees, and aims

---

[5] Plaintiff in the Virginia Action will receive a reimbursement of approximately $20,000 to cover his out-of-pocket expenses incurred in connection with this matter, including several round-trip flights to Virginia and Florida.

to improve the overall governance of the companies. Finally, the substantially reduced fee is reasonable in comparison to the prevailing rate for similar work.

### C. Pursuant to Rule 23.1, The Settlement Proponents' Proposed Notice Satisfies Due Process Requirements

The Settlement Proponents also respectfully request that the Court find that their proposed notice plan meets the requirements of Rule 23.1 and due process. Upon entry of the proposed Order, the Settlement Proponents propose to disseminate, via first class mail, the Notice of Proposed Settlement Agreement and Settlement Hearing (the "Notice"), attached hereto as Exhibit C, to each member of the class.

Rule 23(e) of the Federal Rules of Civil Procedure mandates that "[t]he Court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." The essential purpose of the notice requirement, in light of shareholders' due process rights, is to fairly apprise shareholders of the terms of the proposed settlement and of the options that are open to them. See Maher, 714 F.2d at 451; see also, Greenspun v. Bogan, 492 F.2d 375, 382 (1st Cir. 1974). Courts generally require that the proposed notice adequately describe the nature of the pending action, the claims asserted therein, the general terms of the proposed settlement, the reasons each party recommended settlement, the time and place for the settlement hearing, the procedures shareholders should follow if they wish to object to the settlement, the consequences of not participating in the hearing, and the how to go about obtaining further information. See Maher, 714 F.2d at 451; Bell Atlantic Corp., 2 F.3d at 1317-8; Miller v. Republic National Life Insurance Co., 559 F.2d 426, 429 (5th Cir. 1977); Reynolds v. National Football League, 584 F.2d 280, 285 (8th Cir. 1978); Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1839. Courts

must be mindful, however, that notice to shareholders is intended to be a summary and need not explain all the aspects and consequences of settlement. Maher, 714 F.2d 452. Indeed, the notice is not required to eliminate "all occasion for diligence on the part of the stockholders." Id., (quoting Haudek, The Settlement and Dismissal of Stockholders' Actions—Part II: The Settlement, 23 Sw. L.J. 765, 787 (1969) (footnote omitted)).

Here, the Notice not only satisfies, but goes well beyond these requirements. The Notice, in clear and concise language, explains why the shareholder is receiving the Notice, the allegations raised in the complaint, the procedural history of the case, the provisions of the settlement agreement, the process for approving the settlement, the time and date of the fairness hearing, the steps the shareholder must take if it wishes to object to the settlement, the legal effect of the settlement, and directions for how to obtain further information. (Proposed Notice, Ex. A to Proposed Order). The Notice is also sufficient because it will be sent to all class members, thereby alleviating any concerns that interested persons will not receive notice. Under these circumstances, the Notice is more than adequate to satisfy the requirements of Rule 23(e) and due process.

## IV.   CONCLUSION

For the reasons stated above, plaintiff and defendants respectfully request that this Court enter the Proposed Order attached hereto as Exhibit D.

17

Dated: December 6, 2005                    Respectfully Submitted,


                                           BALES & SOMMERS, P.A.


                                           ___s/ Richard M. Bales, Jr.___
                                                Richard M. Bales, Jr.
                                           Counsel for Plaintiffs


                                           MCGUIRE WOODS LLP


                                           ___s/ James O. Birr, III___
                                                Bryan S. Gowdy
                                                James O. Birr, III
                                           Counsel for Defendants Arnie Geller and
                                           Steven Couture, as Executor of the Estate of
                                           Gerald Couture


                                           WILLIAMS SCHIFINO MANGIONE
                                           & STEADY, P.A.


                                           ___V. Stephen Cohen___
                                                V. Stephen Cohen
                                           Counsel for R.M.S. Titanic, Inc. and
                                           Premier Exhibitions, Inc.